UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE
2004 JUN 14 P 3: 41
U.S. DISTRICT COURT
DISTRICT OF MASS.

CIVIL ACTION NO. 04-10748 MEL

| | |
|---|---|
| SUSAN PURDY,<br><br>Plaintiff,<br><br>v.<br><br>LIFE INSURANCE COMPANY OF<br>NORTH AMERICA AND PRIVATE HEALTHCARE<br>SYSTEM'S INC. LONG TERM DISABILITY PLAN,<br><br>Defendants. | FIRST AMENDED COMPLAINT |

## INTRODUCTION

1. Plaintiff, Susan Purdy ("Ms. Purdy"), brings this action against the Defendants, the Life Insurance Company of North America (LINA), and Private Healthcare Systems Inc.'s ("PHCS") Long Term Disability Plan ("Plan") (collectively referred to as "Defendants") for violation of the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et. seq.* ("ERISA"). Ms. Purdy is a participant in an ERISA welfare benefit plan that is underwritten by LINA. The name of the welfare benefit plan is the Private Healthcare Systems, Inc. Long-Term Disability Plan. The Plan number is SLK-030012.

2. This Complaint challenges: (1) the Defendants' unlawful termination of Ms. Purdy's Long-Term Disability ("LTD") benefits without appropriate justification and without granting her a full and fair review of her claim for benefits; (2) the Defendant's pattern of disregarding the substantial evidence supporting Ms. Purdy's total

disability in an attempt to deprive her of the appropriate LTD benefits she is due; (3) the Defendant's failure to provide a reasonable claims procedure that would yield a decision on the merits of Ms. Purdy's claim; and (4) the Defendant's failure to provide Ms. Purdy with a full and fair review of her claim as required by ERISA.

3. Ms. Purdy is filing this action to recover benefits due under the Plan, to enforce the present rights existing therein, to clarify rights under the terms of the Plan, and to recover costs and attorneys' fees as provided by ERISA.

## JURISDICTION

4. This Court has personal and subject matter jurisdiction over this case under 29 U.S.C. § 1132(e)(2) and (f), without regard to jurisdictional amount or diversity of citizenship, in that the Plan is administered in this district.

## PARTIES

5. Mrs. Purdy is a 60-year-old individual who currently resides in Lowell, Massachusetts. Ms. Purdy is a vested participant in a LINA employee benefit plan, within the meaning of 29 U.S.C. § 1002(2)(7). Ms. Purdy has standing to bring this action under 29 U.S.C. § 1132(a).

6. The defendant, LINA, a for-profit corporation, is a subsidiary of CIGNA Corporation, with its principal place of business in Philadelphia, Pennsylvania. LINA transacts business in Massachusetts and insures and administers the Plan under which Ms. Purdy is suing. LINA is the party responsible for processing claims made under the Plan and making a final determination as to Plan participants' eligibility for LTD benefits.

7. At all times relevant to the claims asserted in this Complaint, LINA purported to act as an ERISA claims fiduciary with respect to participants of the Plan, generally, and specifically, with respect to Ms. Purdy, within the meaning of ERISA.

8. The Plan under which Ms. Purdy is suing is a "long -term disability plan" issued by the Life Insurance Company of North America to Private Healthcare Systems, a Massachusetts company with its principal place of business at 1,100 Winter Street, Waltham, Massachusetts 02451. The Group Plan Number is SLK-030012.

## STATEMENT OF FACTS

### Insurance Entitlement, Definitions of Disability, Discretion

9. In 1993, Ms. Purdy began working at PHCS in Waltham, Massachusetts.

10. While at PHCS, Ms. Purdy was employed as a Project Manager.

11. Ms. Purdy became insured under the Plan in or about 1993.

12. Under the terms of the Plan, PHCS has no discretionary authority to determine a participant's eligibility for LTD benefits or to interpret the terms and provisions of the Plan.

13. LINA underwrote and administers the Plan under which Ms. Purdy is suing.

14. The terms of the Plan do not provide LINA with discretion to determine a participant's eligibility for LTD benefits or to interpret the terms and provisions of the Plan.

15. The Plan provides for the payment of LTD benefits when an insured person becomes disabled. "Disability" is defined under the Plan as an insured individual who is "unable to perform all the material duties of his or her Regular Occupation or a

Qualified Alternative; or 2. unable to earn 80% or more of his or her Indexed Covered Earnings."

16. After LTD benefits have been paid by the Insurer for 36 months, the plan further defines a disabled individual as "1. unable to perform all the material duties of any occupation for which he or she is or, or may reasonably become, qualified based on education, training or experience; or 2. unable to earn 80% or more of his or her Indexed Covered Earnings."

17. Under the Plan, benefits are payable until the insured is no longer disabled, or until the age of 65.

18. The Plan contains a further limitation on disability benefits stating that the "insurance company will pay Disability Benefits on a limited basis during an Employee's lifetime for a Disability caused by, or contributed by; any one or more of the following conditions. Once 24 monthly disability benefits have been paid, no further benefits will be payable for any of the following conditions: 1. Alcoholism; 2. Anxiety Disorders; 3. Delusional (paranoid) disorders; 4. Depressive disorders; 5. Drug addiction or abuse; 6. Eating disorders; 7. Mental illness; 8. Somatoform disorders (psychosomatic illness)."

19. Except for the definition of "disability" quoted above in this Complaint, the Plan contains no other definition or explanation of the term disability.

20. At the time that her benefits were terminated, Ms. Purdy was receiving approximately $1,500.00 in monthly benefits under the Plan.

## Ms. Purdy's Claim for LTD Benefits

21. Ms. Purdy has presented a timely claim to the Defendants, asserting that she is an insured person, that she became totally disabled while insured, and that she is entitled under the Plan to LTD benefits for the period of time beginning on September 19, 2002, when the Defendants wrongfully terminated her benefits, and continuing thereafter without interruption through to the present, and continuing in the future until she reaches the age of 65 or is no longer disabled.

## Ms. Purdy's Application for LTD Benefits

22. Ms. Purdy suffers from Non-Arteritic Ischemic Optic Neuropathy ("NAION").

23. NAION is a form of optic nerve disease that occurs when the blood supply to the eye is reduced or interrupted, causing a loss of vision.

24. Ms. Purdy first began experiencing symptoms of NAION in 1999 and was formally diagnosed with NAION later that year.

25. Ms. Purdy has been receiving treatment for NAION from Drs. Ippolit C. Matjucha of the Lahey Clinic located in Burlington, Massachusetts and Kristen Tallman, OD of the Massachusetts Eye and Ear Infirmary located in Boston, Massachusetts, since 2000.

26. Ms. Purdy's initial symptoms included a loss of vision in her left eye.

27. At the onset of symptoms, Ms. Purdy took two weeks from work and then returned to work despite her partial disability.

28. Five months later, Ms. Purdy began experiencing further deterioration of her sight, this time in her right eye, and was unable to continue in her position at PHCS.

29. At that time, Ms. Purdy applied for LTD Benefits, indicating that her vision had deteriorated to a point where it took her an entire day to complete simple tasks of daily living such as grooming and basic chores.

30. Ms. Purdy listed four main complaints on her initial claim for LTD benefits: low vision, unbalance, poor attention span, and anxiety.

31. Subsequent to the substantial loss of vision in both eyes, Ms. Purdy suffered from some clinical depression as well as anxiety and a limited attention span.

32. Ms. Purdy's symptoms of depression and anxiety resulted from the physical limitations she suffered as a result of her disability.

33. On December 26, 2000, LINA approved Ms. Purdy's claim for LTD benefits. Her gross monthly benefit was $ 3032.00.

34. LINA characterized these benefits as subject to the mental illness restriction clause under the Plan.

35. In the two years that followed, Ms. Purdy emotionally adjusted to a life of severe visual impairment. However, during this time her vision, and thus her physical condition, continued to worsen.

36. In her position as a Project Manager, Ms. Purdy was required to develop and redesign the case management process, which entailed extensive use of her eyes.

**Termination of Benefits**

37. In September of 2002, at the conclusion of two years of mental health LTD benefits, Ms. Purdy requested that LINA continue her LTD benefits on the basis of her physical disability.

38. LINA denied Ms. Purdy's request for a continuation of benefits on September 19, 2002, stating that Ms. Purdy's disability was psychiatric in nature. Specifically, LINA stated:

> We reviewed the information received from your doctors. Unfortunately, your doctors did not provide us with any medical evidence or other clinical findings that would conclusively demonstrate any specific functional limitation(s) unrelated to your well-documented psychiatric impairments.

### Ms. Purdy's Appeal of LINA's Termination of Benefits

39. On February 3, 2003, Ms, Purdy, through counsel, appealed LINA's decision to deny her benefits, by further articulating the physical nature of her illness.

40. The appeal contained a letter dated November 21, 2002, from Ms. Purdy's treating mental health practitioners, Drs. Don P. Sugai, Ph.D. and Andrea Seek, MD, which stated that Ms. Purdy's visual impairment was unequivocally physical in nature.

41. Ms. Purdy's treating physician, Dr. Ippolit Matjucha, stated in a letter dated October 22, 2002, that "because of the visual field defects, the patient takes a while to see things." Dr. Matjucha further acknowledged that "[b]ecause of the above mentioned visual field and visual acuity problems, all based on her optic nerve disease, the patient experiences several visual limitations."

42. Dr. Matjucha also agreed that Ms. Purdy was at a "competitive disadvantage" where employment is concerned, due to her physical condition.

43. The appeal also contained a letter dated October, 30 2002, in which Ms. Purdy's treating physician Dr. Kristen Tallman stated that Ms. Purdy had difficulty "following along a line of text, finding things on her desk and reading fluently," and further that

it is difficult for Ms. Purdy to "cross streets safely...judge curbs and steps," and that her loss of vision "negatively impacts her depth perception."

44. On May 7, 2003, LINA upheld its denial of Ms. Purdy's benefits. In so doing, LINA relied on reviews performed by a vocational rehabilitation counselor and a paper reviewer.

45. LINA's determination upheld the decision that the mental illness limitation applied to Ms. Purdy's case and in the alternative, that her claim was also denied because LINA determined that she was not "totally disabled" according to the terms for physical disability under the Plan.

46. Neither Ms. Purdy nor her treating physicians, Drs. Ippolit Matjucha, M.D. and Kristen Tallman, O.D, were provided with a copy of the paper review prior to LINA's denial.

47. The paper reviewer that LINA relied upon erroneously concluded that if Ms. Purdy's job required "fulltime reading and writing, her performance will fall behind equivalent peers. If telephone work is required intermittently, then rest periods can be in effect attained by interspacing (sic) such calls between reading and writing periods."

48. According to LINA's vocational reviewer, Ms. Purdy's occupation required her to read and write frequently, although not on a continued basis. The vocational reviewer also noted that Ms. Purdy's occupation would involve both verbal and written communications.

### Ms. Purdy's Request to Reconsider LINA's Denial of Her Appeal

49. On November 5, 2003, Ms. Purdy, through counsel, requested that LINA reopen her claim and reexamine its decision to terminate her LTD benefits. Ms. Purdy provided LINA with additional information including vocational and medical expert opinions regarding her disability.

50. The request to reopen contained additional evidence of Ms. Purdy's physical impairment, including several reports by a vocational reviewer from the Massachusetts Rehabilitation Commission, Daniel Blackwell.

51. Mr. Blackwell consistently supported the fact that Ms. Purdy is physically unable to participate in the tasks involved with employment, stating that her loss of vision is a "major impairment to employment."

52. LINA denied Ms. Purdy's request for reconsideration in a letter dated February 3, 2004. In particular, LINA stated that:

> The contents of the information submitted are consistent with the previously reviewed information used to make our prior decisions. While you have continued to have symptoms/complaints typically associated with your conditions, there is no significant pathology to correlate with a level of impairment that would be severe enough to support your inability to perform your occupation, as of November 21, 2002, when benefits ceased.

53. Ms. Purdy has exhausted her administrative remedies pursuant to 29 C.F.R. 2560.503-1(1).

54. Any discretion to which LINA may claim it is entitled under the Plan is negated by the procedural deficits inherent in its review of Ms. Purdy's claim.

55. LINA has failed to meet the minimum requirements for the denial of Ms. Purdy's LTD benefits, in violation of ERISA, 29 U.S.C. 1133, which requires that upon a

denial of benefits, the administrative review procedure must include adequate notice in writing setting forth the specific reasons for the denial of benefits and a reasonable opportunity for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

56. LINA has also failed to meet the Plan requirements for review of claims that have been denied.

57. LINA failed to provide Ms. Purdy a full and fair review of her claim for LTD benefits.

58. The self-serving nature of LINA's decision is illuminated by continued reliance upon the mental illness limitation to deny Ms. Purdy benefits, despite the fact that her disability is physical in nature.

59. The decision to deny Ms. Purdy's benefits was wrongful, unreasonable, irrational, and absolutely contrary to the substantial evidence before LINA, contrary to the terms of the Plan and contrary to law.

60. LINA was influenced by its financial conflict of interest, as both the administrator of the Plan and the payor of benefits thereunder, when it denied Ms. Purdy's benefits.

61. Due to the unlawful denial of benefits under ERISA, Ms. Purdy has lost her rightful long-term disability benefits.

62. Ms. Purdy has also suffered emotional distress and an exacerbation of her physical condition as a result of LINA's actions.

63. Due to the unlawful denial of benefits under ERISA, Ms. Purdy has also lost the use of her long-term disability benefits.

64. Having exhausted the administrative procedures provided LINA, Ms. Purdy now brings this action.

## FIRST CAUSE OF ACTION
### (Enforcement of Terms of Plan Action for Unpaid Benefits)
### (ALL DEFENDANTS)

65. Ms. Purdy realleges each of the paragraphs above as if fully set forth herein.

66. The Plan is a contract.

67. Ms. Purdy has performed all of her obligations under the contract.

68. 29 U.S.C. § 1132(a)(1)(B) states that:

69. A civil action may be brought ---

   (1) by a participant or beneficiary –

   (A)   for the relief provided for in subsection (c) of this section, or

   (B)   to recover benefits due to him under the terms of her plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

70. The Defendants' actions constitute an unlawful denial of benefits under ERISA, as provided in 29 U.S.C. § 1132(a)(1)(B).

71. In accordance with 29 U.S.C. §1132, Ms. Purdy is entitled to be paid benefits under the Plan based upon her disabled status from and after September 2002, and continuing into the present.

72. The Defendants have refused to provide Ms. Purdy with these disability benefits and are, therefore, in breach of the terms of the Plan and ERISA, which requires that the Defendants engage in a full and fair review of all claims and the administration of the Plan in the best interests of the Plan participants.

73. As a direct and proximate result of this breach, Ms. Purdy has lost the principal and the use of her rightful LTD benefits.

## SECOND CAUSE OF ACTION
### (Attorneys' Fees and Costs)
### (ALL DEFENDANTS)

74. Ms. Purdy realleges each of the paragraphs above as if fully set forth herein.

75. Under the standards applicable to ERISA, Ms. Purdy deserves to recover "a reasonable attorney's fee and costs of the action" herein, pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g).

76. The Defendants have the ability to satisfy the award.

77. Ms. Purdy's conduct of this action is in the interests of all participants who subscribe to the Plan, and the relief granted hereunder will benefit all participants.

78. The Defendants have acted in bad faith in denying Ms. Purdy's benefits under the Plan.

79. The award of attorneys' fees against the Defendants will deter others acting under similar circumstances.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that the Court:

(1)   Declare, adjudge and decree that Ms. Purdy is entitled to ongoing LTD benefits as calculated under the terms of the Plan.

(2)   Award Ms. Purdy the full amount of unpaid benefits under the Plan to which she is entitled, together with such pre-judgment interest as may be allowed by law.

(3) Order that the Defendants make restitution to Ms. Purdy in the amount of any losses sustained by Ms. Purdy in consequence of the wrongful conduct alleged herein, together with prejudgment interest.

(4) Award Ms. Purdy the costs of this action and reasonable attorneys' fees; and

(5) Award such other relief as the court deems just and reasonable.

Date: June 14, 2004

Respectfully submitted for the Plaintiff,

By: *Mala Rafik*

Mala M. Rafik
BBO No. 638075
ROSENFELD & RAFIK, P.C.
44 School Street, Suite 410
Boston, MA 02108
617-723-7470

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail(by hand) on 6.14.04

*Mala Rafik*